IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM THOMAS HUDSON, III,

                        Petitioner,

v.                                                OPINION and ORDER

WILLIAM J. POLLARD,                            21-cv-498-jdp

                        Respondent.

---

Petitioner Williams Thomas Hudson, III seeks relief under 28 U.S.C. § 2254 following convictions for conspiracy to commit first-degree intentional homicide and conspiracy to commit arson in Sauk County Circuit Court. Hudson's amended petition is fully briefed and ready for decision.

Hudson raises two claims of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), which respondent contends are meritless. I will deny the amended petition because I agree, though for somewhat different reasons, that Hudson's claims fail on the merits. I will grant a certificate of appealability because reasonable jurists could debate the merit of Hudson's claims.

BACKGROUND

**A. Facts and procedural history**

This background is largely from the state court of appeals' decision affirming the circuit court's decision denying Hudson's motion for postconviction relief under Wis. Stat. § 974.06. *State v. Hudson*, No. 2019AP1667, 2021 WL 8567774 (Wis. Ct. App. Mar. 4, 2021).

Following a jury trial that ended in February 2005, "Hudson was convicted of conspiracy to commit first-degree intentional homicide and conspiracy to commit arson." *See id.* at *1. The state alleged a murder and arson-for-hire scheme that began while Hudson was incarcerated with another inmate, Scott Seal who, unknown to Hudson, was working as an informant for the state. *Id.* "Hudson told Seal that he would kill Lisa (Seal's ex-girlfriend) and commit arson in exchange for money." *Id.* The trial testimony showed that an undercover officer facilitated the scheme and, after Hudson's release from prison, gave him an envelope containing $6,000 and the names and addresses of Seal's targets. *Id.* Hudson accepted the envelope and was arrested. *Id.*

The parties disputed who initiated the idea of Hudson murdering Lisa for money: Seal testified that it was Hudson's idea and Hudson testified that it was Seal's. *Id.* Apart from that, much of the evidence was not in dispute. *Id.* "Hudson did not deny telling Seal that he would kill Lisa for money or accepting cash from the undercover agent," but Hudson argued that he never intended to follow through with killing Lisa or committing arson. *Id.* To support this defense theory, "Hudson testified at length about his sister Dana's financial difficulties, and his attempts to help her get back on her feet." *Id.* Hudson also testified that "he intended to keep the money and that he took the targets' addresses so that Seal would not be suspicious." *Id.*

Represented by David Karpe, Hudson filed a motion for postconviction relief under Wis. Stat. § 974.02 and Wis. Stat. § 809.30. Dkt. 21-6 at 1–14; *Hudson*, 2021 WL 8567774, at *1. The circuit court denied the postconviction motion without holding a hearing under *State v. Machner*, 92 Wis. 2d 797 (Ct. App. 1979). Dkt. 21-7. Karpe "appealed on grounds that [Hudson's] conviction was the result of outrageous government conduct." *See Hudson*,

2

2021 WL 8567774, at *1; Dkt. 21-8. The state court of appeals affirmed the judgment of conviction and order denying postconviction relief. *State v. Hudson*, 2012 WI App 118. The state supreme court and the U.S. Supreme Court denied review. *State v. Hudson*, 2013 WI 22; *Hudson v. Wisconsin*, 571 U.S. 854 (2013).

Hudson then filed his postconviction motion under Wis. Stat. § 974.06. *Hudson*, 2021 WL 8567774, at *1. Hudson asserted that his trial counsel, Daniel Berkos, "was ineffective for failing to adequately investigate the role or involvement of his sister, Dana [Hudson], and by failing to call her as a witness." *Id.* Regarding the first claim, "Hudson argued that trial counsel briefly reviewed copies of Dana's correspondence with Hudson and Seal, rather than conducting a meaningful interview with Dana prior to trial." *Id.* (alteration adopted). Regarding the second, "Hudson argued that Dana's testimony would have corroborated his testimony that she needed money and that she would have been a strong character witness as to Hudson's demeanor and activities when he was free, specifically that she had never seen or known Hudson to be violent or have physical altercations with others." *Id.* Hudson also argued that Karpe provided ineffective assistance by failing to raise these claims during Hudson's direct appeal. *Id.*

At two *Machner* hearings, the circuit court heard the testimony of Berkos, Karpe, Hudson, and Dana Hudson. *Id.* at *2; Dkt. 21-13; Dkt. 21-14. The circuit court denied the motion, determining that Berkos's decisions were strategic one and that he had not performed deficiently. *See id.* at *2; Dkt. 21-15.

The state court of appeals affirmed, determining that Hudson failed to show that Berkos "performed deficiently." *See id.* at *2–3. The state court of appeals rejected Hudson's claim that Berkos failed to adequately investigate what Dana Hudson "knew and could contribute to the

3

defense at trial." *See id.* at *2. The state court of appeals agreed with the circuit court's determinations that Berkos: (1) "learned all he needed to evaluate" Dana Hudson's potential testimony; (2) obtained all of Dana Hudson's correspondence with Hudson and Seal; and (3) learned that, around the time of the alleged conspiracy, Dana Hudson did not know that Hudson was scamming Seal or what his plans were regarding Seal. *See id.*

The state court of appeals rejected Hudson's claim that counsel was deficient in failing to call Dana Hudson as a witness. *See id.* The state court of appeals agreed with the circuit court's determination that Berkos's decision "was based on an evaluation of the benefits and risks and was the type of judgment call that attorneys are regularly called upon to make." *See id.* The state court of appeals reasoned that Berkos's "strategy was influenced by his recognition of the dangers of a defendant introducing character evidence" and his "belief that Dana's testimony would not have improved upon Mr. Hudson's testimony." *See id.* The state court of appeals also concluded that Hudson's postconviction motion under Wis. Stat. § 974.06 was procedurally barred because Hudson: (1) failed to raise his claims against Berkos in his earlier postconviction motion under Wis. Stat. § 974.02 and; (2) could not show that Karpe's failure was deficient because Hudson's claims against Berkos were meritless. *See id.* at *3. The state supreme court denied review. *State v. Hudson*, 2022 WI 87.

In this court, Hudson filed an amended habeas petition contending that Berkos provided ineffective assistance by failing to adequately investigate what Dana Hudson knew and what her testimony would have been before trial and failed to call her as a witness. Dkt. 14 at 4–8. To overcome a procedural default, Hudson adds that Karpe provided ineffective assistance by failing to raise Hudson's claims against Berkos in the first postconviction motion. *Id.* at 8–10.

4

Respondent filed an answer and the state court record. *See* Dkt. 21. Hudson filed a brief in support. Dkt. 26. Respondent filed a brief in opposition, Dkt. 27, and Hudson replied, Dkt. 30.

## B. Key *Machner* hearing testimony

Dana Hudson testified at the first hearing that she talked to Berkos on the telephone "multiple" times before trial. Dkt. 21-3 at 106. At the second hearing, Dana Hudson testified that she specifically remembered calling Berkos one time before trial. *See* Dkt. 21-14 at 160–61. The call, according to her, wasn't very long and was just to "establish[] the letters." *Id.* at 160. Dana Hudson remembers another "contact" that Berkos initiated before trial, but doesn't remember whether it was "by letter or over the phone." *Id.* at 161. Dana Hudson testified that Berkos was "curious" about the letters and mentioned the possibility of her testifying, which he was receptive to. *See id.* at 161–62. Dana Hudson testified that she sent Berkos letters between her and Hudson and her and Seal, and had them notarized as Berkos requested. *See* Dkt. 21-3 at 104, 106; Dkt. 21-14 at 159, 179.

Dana Hudson testified that she was available to testify and attended trial each day of trial with the expectation of testifying. Dkt. 21-3 at 103; Dkt. 21-4 at 162, 164. Dana Hudson's explanations for why she attended trial with the expectation of testifying are not fully clear. *See* Dkt. 21-3 at 103–05; Dkt. 21-4 at 162–64. At the first hearing, Dana Hudson testified that, during trial, she asked Berkos if she was going to testify, and he told her that he wasn't sure but to be available. Dkt. 21-13 at 106–07. At the second hearing, however, she testified that she and Berkos had no conversations about her testifying during trial. Dkt. 21-14 at 166.

Berkos remembered one phone call with Dana Hudson before trial, and assumed that he spoke with her again after he received the letters. *See* Dkt. 21-4 at 30–32. Berkos testified

5

that, based on his conversations with Hudson and Dana Hudson, and his review of the letters and discovery, he considered calling Dana Hudson to testify about the letters. *See* Dkt. 21-14 at 30–31, 110. Berkos had a general concern that the jury would disbelieve Dana Hudson because she was Hudson's sister. *See id.* at 40, 110–11, 166.

Berkos did not remember any specific conversations with Hudson about using Dana Hudson as a character witness. *See id.* at 109–10. Berkos testified that he is generally reluctant to use character evidence because "it opens the door for the State to bring on other aspects of character, including specific instances of criminal conduct." *See id.* at 110.

Berkos testified that, upon the completion of Hudson's testimony, he decided that the testimony of Dana Hudson could not add anything to Hudson's defense. *See* Dkt. 21-14 at 36–37. Berkos believed that Hudson was an "excellent" witness and that Dana Hudson's letters, which were admitted as evidence, supported his testimony. *See id.* at 36–38. Berkos testified that, although Dana Hudson's testimony would have corroborated Hudson's testimony and the letters, it would not have added "anything substantially greater than what [they] had already presented to the jury." *Id.* at 37. According to Berkos, the risk of cross-examination revealing negative information outweighed the benefit of calling Dana Hudson as a witness. *See id.* at 36–40.

Berkos believed that the letters corroborated Hudson's testimony that he did not intend to commit murder or arson because they "showed [his] state of mind at the time those letters were being written and what [his] intentions were." *See* Dkt. 21-14 at 38. Berkos generally did not like having his client testify, but noted Hudson's intelligence and high literacy as a part of the "ongoing process to evaluate [Hudson's] ability to be a good witness." *See* Dkt. 21-14 at 109. Berkos had practiced primarily criminal law since he graduated from

law school in 1978 and had handled homicide cases before he represented Hudson. *See id.* at 105–06.

## ANALYSIS

### A. Legal standards

Federal courts may grant habeas relief only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. For the application to be unreasonable, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015); *Wood v. Allen*, 558 U.S. 290, 301–02 (2010).

When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary

review." *See Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Review under § 2254(d) is limited to the state-court record. *See Shoop v. Twyford*, 142 S. Ct. 2037, 2043–44 (2022); *Dunn v. Neal*, 44 F.4th 696, 702 (7th Cir. 2022). The petitioner bears the burden to show an error under § 2254(d), and the burden of proof under § 2254 generally. *See Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022); *Quintana v. Chandler*, 723 F.3d 849, 854 (7th Cir. 2013).

Claims of ineffective assistance of trial counsel are governed by the two-part test in *Strickland*. To establish that counsel provided ineffective assistance, Hudson must show that Berkos's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. at 687. To prove deficient performance, Hudson must show that Berkos's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Hudson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a petitioner cannot show deficient performance under *Strickland*'s first prong, the court need not address the prejudice prong. *See Chichakly v. United States*, 926 F.2d 624, 630 (7th Cir. 1991).

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Because the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* The question is not whether counsel's actions were reasonable, but rather, "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

8

**B. The state court's application of the standards**

The parties agree that, because the state court of appeals addressed Hudson's claims of ineffective assistance on the merits, Hudson's claims are not procedurally defaulted. But Hudson contends that the state court of appeals' decision is not entitled to any deference under § 2254(d) because it misapplied *Strickland*. Hudson reasons that the state court of appeals replaced *Strickland*'s reasonableness standard with a "clearly erroneous standard." *See* Dkt. 30 at 4.

This contention fails. The state court of appeals correctly stated *Strickland*'s two-prong test and noted that it need not address both prongs if Hudson failed to make a sufficient showing under either one. *Hudson*, 2021 WL 8567774, at *2. The state court of appeals then analyzed testimony presented at the *Machner* hearings and expressly stated that Hudson failed to show that Berkos "performed deficiently." *See id.* at *2–3. Hudson correctly notes that the state court of appeals twice stated that the circuit court's findings were not "clearly erroneous." *Id.* at *2. But these statements must be taken in context. In analyzing Hudson's claim that Berkos failed to adequately investigate what Dana Hudson knew and could contribute to the defense at trial, the state court of appeals stated that Hudson failed to show that "the court's findings were clearly erroneous *or to show that the findings do not support its determination that trial counsel's investigation into Dana's potential value as a witness fell within the wide range of reasonable professional assistance*." *Id.* at *2 (emphasis added). Similarly, in analyzing Hudson's claim that Berkos failed to call Dana Hudson as a witness, the state court of appeals wrote that the circuit court's "determinations were not clearly erroneous and *support[ed] a conclusion that counsel's performance was not constitutionally deficient*." *Id.* (emphasis added). The best reading of the state court of appeals' decision that its use of the phrase "clearly erroneous" reflected its

9

determination that the record supported the trial court's characterization of the testimony presented at the *Machner* hearings. Hudson has not shown that the state court of appeals conflated the reasonableness standard under *Strickland*'s first prong with a clearly erroneous standard, or replaced the reasonableness standard with a clearly erroneous standard.

## C. Adequacy of Berkos's investigation of Dana Hudson

There is a reasonable argument that Berkos's investigation of Dana Hudson satisfied *Strickland*'s deferential standard. Berkos testified that, based on his conversations with Hudson and Dana Hudson, and his review of the letters and discovery, he considered calling Dana Hudson as a witness. *Cf. Davis v. Lambert*, 388 F.3d 1052, 1064 (7th Cir. 2004) (the decision not to present a witness can be strategically sound if counsel "look[s] into readily available sources of evidence"). Berkos did not have a specific recollection of his conversations with Dana Hudson, Dkt. 21-14 at 32, but this is unsurprising considering that he testified 14 years after the relevant events, *id.* at 6. Berkos could have, as Hudson argues, done more to investigate the potential value of calling Dana Hudson as a witness, such as interviewing her in person to assess her credibility or conducting a criminal background check. But, contrary to Hudson's contention, this is not a case where "Berkos made virtually no effort to determine Dana's potential value as a witness." *See* Dkt. 26 at 26. The record supports the court of appeals' determinations that Berkos obtained all of Dana Hudson's letters with Hudson and Seal and learned what he needed to evaluate her potential testimony. Other considerations discussed below further support the argument that Berkos's investigation was reasonable; Hudson's claims overlap considerably. *See* Dkt. 27 at 9 n.4 (responding to Berkos's claims together because they "are not neatly distinct"); *cf. Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009)

("Ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed." (alteration adopted)).

**D. Berkos's decision not to call Dana Hudson as a witness**

Hudson contends that Berkos's deficiently failed to call Dana Hudson as a witness to corroborate his testimony. In rejecting this claim, the state court of appeals relied on Berkos's testimony that, after Hudson testified at trial, he decided that the testimony of Dana Hudson could not add anything to Hudson's defense and didn't warrant the risk of potentially damaging cross-examination. *See* Dkt. 21-7 at 5; *see also* Dkt. 21-15 at 24. The problem with this reasoning is that, as Hudson argues, the record reflects that Berkos did not plan to use Dana Hudson as a witness at trial: Dana Hudson's name was not on the witness list that the trial judge read at the start of trial. Dkt. 21-1 at 12. So, contrary to his testimony, Berkos could not have decided to refrain from calling Dana Hudson based on an assessment *at trial* that Hudson's testimony was excellent and that Dana Hudson might have undermined it.

The court of appeals arguably "construct[ed]" this "strategic defense[]" for Berkos after the fact. *Cf. Goodman v. Bertrand*, 467 F.3d 1022, 1029 (7th Cir. 2006). It is doubtful that this was a reasonable application of *Strickland*. *Cf. Wiggins v. Smith*, 539 U.S. 510, 526–27 (2003) ("[T]he 'strategic decision' the state courts and respondents all invoke to justify counsel's [performance] . . . resembles more a post hoc rationalization of counsel's conduct than an accurate description of [counsel's performance]." (emphasis omitted)); *Williams v. Washington*, 59 F.3d 673, 680 (7th Cir. 1995) ("[C]ounsel's behavior must be assessed as of the time he made the complained of decision . . . .").

Because the state court of appeals "offered a bad reason for denying [Hudson's] second claim," I will not "attach any special weight to [these particular] reasons." *See Whatley v. Zatecky*,

11

833 F.3d 762, 779 (7th Cir. 2016). But, "if the [state] record as a whole supports the state court's outcome," I still must deny the claim. *See id.*

Berkos had a concern that the jury would disbelieve Dana Hudson's testimony because of her family relationship with Hudson. Berkos testified that he developed this concern after speaking with Dana Hudson, *see* Dkt. 21-14 at 110, which belies the idea that it is an after-the-fact justification for his decision. Dana Hudson testified that she had a close relationship with Hudson. *See* Dkt. 21-14 at 119. The jury would have been allowed to consider Dana Hudson's close relationship with Hudson in evaluating her credibility. *See Brady v. Pfister*, 711 F.3d 818, 824 (7th Cir. 2013) ("[T]he trier of fact would have been entitled to take the [family] relationships [and friendships] into account in assessing the witnesses' credibility . . . ."); *see also United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant . . . ."). The circuit court so instructed the jury in Hudson's case. Dkt. 21-4 at 49 (instructing the jury that, in determining a witness's credibility, it must consider "[w]hether the witness has an interest . . . in the results of this trial," "bias," and "[p]ossible motives for falsifying testimony"). Berkos's concern, albeit expressed only in generalities, was a legitimate one.

The record shows that Berkos devised the strategy to use Dana Hudson's letters to corroborate Hudson's testimony before trial, despite his inconsistent testimony about the plan to have Dana testify. After reviewing the letters before trial, Berkos questioned Hudson extensively about them during direct examination. *See* Dkt. 21-3 at 201–20. Several of the letters were admitted as evidence, and Berkos argued during his closing that the letters supported Hudson's testimony that he was scamming Seal. *See id.*; Dkt. 21-4 at 106–07; Dkt. 26 at 23. Berkos did not clearly and directly testify that he decided not to use Dana Hudson

12

as a witness before the trial partly because the letters stood to corroborate Hudson's testimony, but *Strickland* does not require defense counsel to "confirm every aspect of the strategic basis for his . . . actions." *See Richter*, 562 U.S. at 109.

Hudson argued in state court that Berkos was deficient for failing to call Dana Hudson to vouch for his character. But Hudson's amended petition and initial brief contain only fleeting references to this argument. *See* Dkt. 14 at 5; Dkt. 26 at 34. These conclusory allegations do not meet § 2254's heightened pleading requirements or satisfy *Strickland*. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994); *Strickland*, 466 U.S. at 690; *Mayberry v. Dittmann*, 904 F.3d 525, 532 (7th Cir. 2018). But these pleading issues are ultimately immaterial, because it's clear that Dana is Hudson's close relative, and Berkos had a fair reason to question whether the jury would believe her testimony.

To sum up, Berkos spoke with Hudson and Dana Hudson about the prospect of her testifying and reviewed the evidence about which she would have testified. Berkos had a fair concern that the jury would discredit Dana Hudson's testimony, and it's a fair inference that Berkos determined that the letters alone would corroborate Hudson's testimony, a strategy Berkos was evaluating before trial. *See* Dkt. 21-14 at 109. The record supports the state court of appeals' conclusion that Berkos's performance was not deficient. *See Meyers v. Gomez*, 50 F.4th 628, 642 (7th Cir. 2022) ("When an attorney has looked into a potential defense witness and yet has made a deliberate decision not to present that individual's testimony, then his decision is likely a strategic decision that warrants the greatest degree of deference from a court.").

Hudson cites several cases to support the contention that, because the case turned on credibility, Berkos was deficient in failing to more thoroughly investigate using Dana Hudson

13

as a corroborating witness and to call her as a witness. The court of appeals has held that, in "a swearing match between the two sides, counsel's failure to call two useful, corroborating witnesses, despite the family relationship, constitutes deficient performance." *Toliver v. Pollard*, 688 F.3d 853, 862 (7th Cir. 2012). But *Toliver* is distinguishable because, although Dana Hudson was arguably "the only [] witness[] that [c]ould have corroborated [Hudson's] theory of defense," *cf. id.*, Berkos introduced the substance of her anticipated testimony through the letters. Berkos's strategic decision to introduce Dana Hudson's testimony through the letters was reasonable.

Hudson's other cited cases are also factually distinguishable. Many of them involve, among other different circumstances, counsel's failure to investigate or present a disinterested witness. *See Blackmon v. Williams*, 823 F.3d 1088, 1104 (7th Cir. 2016); *Carter v. Duncan*, 819 F.3d 931, 943 (7th Cir. 2016); *Goodman*, 467 F.3d at 1030; *Adams v. Bertrand*, 453 F.3d 428, 436–37 (7th Cir. 2006); *Montgomery v. Petersen*, 846 F.2d 407, 415 (7th Cir. 1988); *see also Boss v. Pierce*, 263 F.3d 734, 745 (7th Cir. 2001) ("We have previously recognized that independent corroboration of the defense's theory of the case by a *neutral and disinterested witness* is not cumulative of testimony by interested witnesses, and can undermine confidence in a verdict." (emphasis added)).

There are court of appeals' decisions, some of which Hudson has cited, "holding on the facts presented that an accused's trial counsel could not make a legitimate strategic decision not to pursue the testimony of a particular witness without first speaking to the witness and finding out what she has to say." *Meyers*, 50 F.4th at 643 (collecting cases); *see also Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006) ("The lawyer could not know how complete or accurate a prospective witness's statement to the police was without talking to the witness.");

*U.S. ex rel. Cosey v. Wolff*, 727 F.2d 656, 657–58 (7th Cir. 1984) ("[Counsel] failed to so much as interview or investigate even one of these potential witnesses."), *overruled on other grounds*, *United States v. Payne*, 741 F.2d 887 (7th Cir. 1984). But these are distinguishable because Berkos communicated with Dana Hudson at least once by phone and by mail, reviewed all the letters about which she would have testified, and made them a key part of his trial strategy.

No evidentiary hearing is warranted because, as my analysis shows, "the record . . . precludes habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). I have resolved the issues raised in the amended petition "by reference to the state court record." *Id.*

I will grant a certificate of appealability because Hudson has "demonstrate[d] that reasonable jurists would find [my] assessment of [his *Strickland*] claims debatable." *See Slack v. McDaniel*, 529 U.S. 473, 474 (2000); *see also* 28 U.S.C. § 2253(c)(2).

ORDER

IT IS ORDERED that:

1. Petitioner William Thomas Hudson, III's amended petition, Dkt. 14, is DENIED.

2. A certificate of appealability is GRANTED.

3. The clerk of court is directed to enter judgment and send petitioner copies of this order and the judgment.

Entered June 12, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge